Magistrate Judge Michelle L. Peterson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ZYAIRE DONTAEVIOUS ZAMARION WILKINS,<br>Defendant. | CASE NO. MJ26-421<br><br>COMPLAINT for VIOLATIONS<br><br>Title 18, United States Code, Sections 371 |

BEFORE Michelle L. Peterson, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

**COUNT ONE**

**(Conspiracy to Obtain Information by Computer for Private Financial Gain)**

**A. Overview**

1. The defendant ZYAIRE DONTAEVIOUS ZAMARION WILKINS ("WILKINS") conspired with others to engage in the hacking of protected computers to obtain private information of their victims. WILKINS and his co-conspirators embedded malware into several video games, which were in turn downloaded by thousands of



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

individuals. The video games were available for download on a popular digital distribution software company for video games located in the Western District of Washington (henceforth, "Victim Company"). Using the malware, WILKINS and his co-conspirators stole credentials and other confidential user information, such as cryptocurrency account log-in information. They subsequently used the information to steal cryptocurrencies from their victims' wallets.

**B. Offense**

2. Beginning at a time unknown, but no later than in or about May 2024, and continuing to in or after February 2026, in King County, within the Western District of Washington, and elsewhere, the defendant WILKINS and others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree together to commit offenses against the United States, to wit:

a. to intentionally access computers without authorization, and thereby obtain information from protected computers, and further to commit the offense for purposes of commercial advantage and private financial gain, in violation of Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i).

**C. Objects of the Conspiracy**

3. The objects of the conspiracy included, through use of deceptive and fraudulent means, gaining access to protected computers without authorization and to the data stored thereon. The objects of the conspiracy also included stealing confidential information, including account log-in information, auto-filled data, user tokens, and cookies, with the purpose and intent to deprive victims of the exclusive control and ownership of their property. The objects of the conspiracy further included obtaining money and things of value through use of the stolen victim data.

**D. Manner and Means of the Conspiracy**

4. The manner and means used to accomplish the conspiracy included, among other things, the following:



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. The conspirators, including WILKINS and others, prepared and executed a scheme to obtain access to victim data by making available video games embedded with malware on the Victim Company's digital platform. The malware was then used to access and steal confidential information.

b. As part of the malware scheme, the conspirators marketed the malware-embedded video games on social media and messaging platforms, such as Discord, Telegram, X / Twitter, and LinkedIn, and encouraged others to download the games. In addition, the conspirators wrote or obtained computer programs, frequently referred to as "bots", to identify individuals with large cryptocurrency holdings and send them targeted messages.

c. After their victims downloaded the games, the conspirators used the malware to access and steal private user data and credentials. The conspirators, including WILKINS and others, went through the stolen data and identify any information that could be used to access, without authorization, cryptocurrency accounts of others and steal cryptocurrencies from their victims.

d. Based on the investigation to date, investigators believe that WILKINS and his co-conspirators gained unauthorized access to approximately 80 cryptocurrency wallets and stole cryptocurrencies worth at least $220,000.

**E. Overt Acts**

5. In furtherance of the conspiracy, and to achieve the objects thereof, the defendant WILKINS and others known and unknown, did commit and cause to be committed the following overt acts, among others, in King County, in the Western District of Washington, and elsewhere:

a. On various dates, the conspirators made their malware-embedded games available on the Victim Company's digital platform:

(i) In or about May 2024, the conspirators uploaded a malware-embedded game named "DASHVERSE".



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(ii) In or about November 2024, the conspirators uploaded a malware-embedded game named “Lunara”.

(iii) In or about February 2025, the conspirators uploaded a malware-embedded game named “PirateFi”.

(iv) In or about August 2025, the conspirators uploaded a malware-embedded game named “BlockBlasters”.

(v) In or about January 2026, the conspirators uploaded an updated version of a game named “Lampy”, which contained malware.

b. In or about September 2025, the conspirators used malware to access without authorization a computer with an Internet Protocol (“IP”) address ending in .140 that was located within the Western District of Washington.

c. On various dates, the conspirators communicated and collaborated to develop aspects of the malware scheme, discuss malware efforts targeting victims, and coordinate the sharing of stolen data. Examples of such conduct include the following:

(i) On or about September 27, 2025, WILKINS and one of his co-conspirators (“SUBJECT #1”) exchanged messages about how to “drain” cryptocurrency wallets by tricking victims into authorizing transactions that instantly empty their wallets.

(ii) On or about November 20, 2025, WILKINS and SUBJECT #1 exchanged messages about what type of malware should be embedded onto their video games.

(iii) On or about January 17, 2026, after the game “Lampy” was updated to include malware, WILKINS and SUBJECT #1 exchanged messages about how to get people to download and play the game.

All in violation of Title 18, United States Code, Section 371.

And the complainant states that this Complaint is based on the following information:



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

I, Sean Huseby, being first duly sworn on oath, depose and say:

## AGENT BACKGROUND & INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation, currently assigned to the Seattle Field Office, and have been so employed since December 2022. I am assigned to a Cyber Task Force, where I investigate computer intrusions and other cybercrimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, cybercrimes, computer evidence identification, computer evidence seizure and processing, and criminal law and procedures.

2. The facts set forth in this affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of this Complaint, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## SUMMARY OF INVESTIGATION

3. Based on the investigation to date, I know that SUBJECT #1 created Developer Accounts on the Victim Company's platform and launched video games embedded with malware, with WILKINS and other co-conspirators helping to market the games. WILKINS and his co-conspirators launched eight games embedded with malware and infected the devices of approximately 8,000 individual customers of the Victim Company. WILKINS and his co-conspirators subsequently used the personal data stolen from their victims to gain unauthorized access to approximately 80 cryptocurrency wallets and stole cryptocurrencies worth at least $220,000.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4. The Victim Company identified eight Developer Accounts believed to have been created by SUBJECT #1 using the stolen identities of U.S. citizens. According to the Victim Company, Developer Accounts differ from individual customer accounts because the Victim Company requires methods of payment and identification documents when creating, verifying, and approving a Developer Account.

***Identification of SUBJECT #1***

5. For one of those Developer Accounts, SUBJECT #1 used a Google email address ("Google Account 1") to register the account. According to the Victim Company, the Developer Account associated with Google Account 1 released a game application embedded with malware in or around November 2024. Based on records from the Victim Company, investigators identified additional accounts that were accessed from the same device or hardware as the Developer Account associated with Google Account 1. The registration email address for one of those additional accounts was another Google email address ("Google Account 2").

6. Records from Google showed that Google Accounts 1 and 2 were linked by cookies[1] (i.e., were accessed from the same web browser) at least eight different days between October 8, 2025, and November 7, 2025. In addition, two additional Google email accounts ("Google Account 3" and "Google Account 4") were accessed from the same web browser as Google Account 2 on at least 25 unique days over the course of approximately eleven months.

7. Records from Apple Inc. ("Apple") showed that there were two Apple accounts associated with Google Accounts 3 and 4. The subscriber information of the two Apple accounts listed SUBJECT #1's name as the subscriber's name and SUBJECT #1's

---

[1] Based on my training and experience, I know that providers of e-mail and social media services often track the behavior and activities of persons using accounts by using cookies, which are strings of characters and numbers stored on a person's computer on their web browser. These cookies can often show whether more than one account was accessed by the same computer (and specifically the same web browser), as the provider can recognize that cookie when the same device returns to the service to access an account.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

address as the subscriber's mailing address. In addition, the Apple account associated with Google Account 3 listed SUBJECT #1's phone number as the accountholder's phone number.

8. Records from T-Mobile included several Device Numbers associated with the phone number. One of those Device Numbers is associated with the Apple account linked with Google Account 3, and two of those Device Numbers are associated with the Apple account linked with Google Account 4.

9. The records from Google also showed that Google Account 3 had email communications with Coinbase. Subpoenaed records from Coinbase showed that a driver's license belonging to SUBJECT #1 with SUBJECT #1's address was used to create the account, and that SUBJECT #1's phone number was the verified phone number associated with the account.

10. To ascertain whether SUBJECT #1 was residing at their address, I applied for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned with SUBJECT #1's phone number. On January 7, 2026, Magistrate Judge Michelle L. Peterson of the U.S. District Court for the Western District of Washington authorized the warrant. After reviewing the location information, including timing advance data provided by T-Mobile from January 7, 2026, through January 21, 2026, the FBI was able to ascertain that SUBJECT #1 was residing at their known address because the vast majority of the location data was consistently near or covering the address from 9PM EST to 6AM EST.

11. Based on the evidence that the investigation team had gathered, a federal magistrate judge authorized a warrant to search SUBJECT #1's person and premises and seize certain evidence in January 2026. The team executed the warrant in early February 2026, and seized, among other items, certain evidence from SUBJECT #1's desktop computer, cell phones, and other digital devices.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12. For example, the seized evidence included: (1) data and artifacts related to the malware-embedded video games that SUBJECT #1 had used in furtherance of his criminal scheme; (2) the stolen identification documents used by SUBJECT #1 to create the Developer Accounts; and (3) the passwords for the Developer Accounts.

13. The seized evidence also included messages between SUBJECT #1 and another individual with username "Sibel.eth" on Signal, an encrypted messaging application for instant messaging, voice calls, and video calls. The messages indicated a high level of collaboration between SUBJECT #1 and "Sibel.eth" in furtherance of the malware scheme. For example, they exchanged the following messages on or about November 20, 2025:

> **Sibel.eth**: "Well, I will buy this RAT if you are ready to implement. It will be 10k invest on my part."
>
> **SUBJECT #1**: "i think it's worth it / if is really that good / we do need a proper rat for this and not some shit"
>
> **Sibel.eth**: "Is already paid for and I go crypt it you just need implement the stealers and rat . . ."
>
> **SUBJECT #1**: "i have the tester ready, once it's all wrapped up we will be testing soon /… / it's great we are both serious now and focused everything will be setup and launched momentarily"

14. On or about September 27, 2025, SUBJECT #1 and "Sibel.eth" exchanged messages about a criminal scheme in which they would run "draining campaigns" regarding cryptocurrency wallets. Based on my training and experience, "draining" refers to a criminal scheme in which a threat actor tricks victims into authorizing transactions or entering seed phrases[2] into a phishing website so that the threat actor can instantly the victim's cryptocurrency wallet. "Sibel.eth" sent SUBJECT #1 a Bitcoin address ("Bitcoin Address") for payment to launch a cryptocurrency draining campaign. SUBJECT #1

---

[2] A "seed phrase" is a sequence of randomly generated words that works as a password for a cryptocurrency wallet.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

responded, "i don't have a budget really maybe 10k to start." Investigators verified that a payment of approximately $10,000 had been sent to the Bitcoin Address on the same day.

15. The FBI interviewed SUBJECT #1 in Seattle, Washington, in March 2026. During the meeting, SUBJECT #1 stated that they communicated with various individuals on Discord, Telegram, and Signal to get help in furtherance of the malware scheme. One of those individuals was "Sibel.eth", and SUBJECT #1 stated that "Sibel.eth" provided them with money to launch and to market the malware-embedded games. In return, SUBJECT #1 shared a portion of the cryptocurrencies they stole from their victims with "Sibel.eth". SUBJECT #1 added that they gave their victims' private information to "Sibel.eth", and that they did not know the true identity of "Sibel.eth".

***Identification of "Sibel.eth" as WILKINS***

16. Investigators identified payments of cryptocurrency from the Bitcoin Address to Bitrefill, an online platform that allows users to purchase digital gift cards, digital SIM cards, and phone refills with cryptocurrencies. Records from Bitrefill showed that the payments were associated with one Bitrefill account, which was registered using email address eversosad000[@]gmail.com ("Eversosad Email Address"). The records also showed that the account purchased over 150 gift cards, including gift cards from UberEats. Based on my training and experience, I know that cybercriminals commonly use cryptocurrency payment services provided by Bitrefill to hide their criminal proceeds from detection by financial institutions and/or law enforcement and to use the proceeds in seemingly legitimate ways.

17. In response to a subpoena requesting subscriber information of any accounts that are associated with the UberEats digital gift cards, Uber identified only one account, which was registered using phone number 754-366-0877 ("Target Cell Phone Number").

18. Based on this information, Magistrate Judge David W. Christel of the U.S. District Court for the Western District of Washington issued an order pursuant to 18



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

U.S.C. § 2703(d) requiring Google to disclose certain information related to the Eversosad Email Address. The investigation team reviewed email header information associated with the email address, which showed that the email address communicated with email domains associated with artificial intelligence, cryptocurrency, and online gambling companies. Based on my training and experience, I know that cybercriminals commonly use those companies' services in furtherance of their criminal schemes.

19. Google's records also showed that the Eversosad Email Address was linked by cookies with other email addresses, including zdw8[@]students.uwf.edu and depressedmammal[@]gmail.com. The Google account associated with depressedmammal[@]gmail.com listed the Target Cell Phone Number as the recovery SMS phone number. Upon information and belief, investigators believed that zdw8[@]students.uwf.edu is an email address associated with a student with first, middle, and last name initials "zdw" at the University of West Florida, and that the email account services are being provided by Google. Based on his full name (Zyaire Dontaevious Zamarion Wilkins), WILKINS's initials are likely to be "zdw".

20. The records from Google also showed that the Target Cell Phone Number was associated with email address zyairewilkins69[@]gmail.com. In addition, records from Snap Inc. showed that a Snapchat account was created using the Target Cell Phone Number, and that the account previously used "Zyaire Wilkins" as its display name.

21. Information provided by T-Mobile in response to a grand jury subpoena included the subscriber's name and address for the Target Cell Phone Number. Based on open-source information, investigators learned that the subscriber's name is the name of WILKINS's mother, and the subscriber's address in North Lauderdale, Florida, is associated with WILKINS.

22. On or about June 9, 2026, Magistrate Judge Theresa L. Fricke of the U.S. District Court for the Western District of Washington issued an order pursuant to 18 U.S.C. § 2703(d) requiring Uber to disclose certain information related to the Uber



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

account associated with the Target Cell Phone Number. Records from Uber showed over 500 food delivery orders between March 2024 and May 2026, totaling over $9,000 with all the orders getting delivered to three addresses: two addresses associated with the University of West Florida and WILKINS's address.

23. The UberEats deliveries to the two university addresses were made during the months in which school was in session: March to May 2024; August to December 2024 (with one exception in late November 2024 that was delivered to WILKINS's address); January to April 2025; August to December 2025 (with several exceptions in late November 2025 that were delivered to WILKINS's address); and January to April 2026 (with a couple of exceptions in early March 2026 that were delivered to WILKINS's address). Otherwise, the deliveries were made to WILKINS's address, including approximately 15 deliveries between May 6 and 17, 2026.

24. To ascertain whether WILKINS is currently residing at the address, I applied for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned with the Target Cell Phone Number. On June 18, 2026, Magistrate Judge S. Kate Vaughan of the U.S. District Court for the Western District of Washington authorized the warrant. Investigators reviewed the T-Mobile location data provided to determine a historical and current pattern of life for WILKINS. The records showed that WILKINS remained primarily in Tamarac and North Fort Lauderdale, Florida, between May 1, 2026, and June 30, 2026. The vast majority of the location data from the Target Cell Phone Number were consistently near or covering the location of WILKINS's address in North Lauderdale from all hours of the day, including 9PM ET to 6AM ET.

25. Based on the evidence that the investigation team had gathered, Magistrate Judge Jared M. Strauss of the U.S. District Court for the Southern District of Florida authorized a warrant to search WILKINS's person and premises and seize certain evidence on July 6, 2026.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

***Execution of the Search Warrant***

26. Investigators arrived at WILKINS's address to execute the warrant at approximately 6AM ET on July 8, 2026. The FBI agents announced their presence and purpose of their visit over loudspeakers, no one inside the premises answered. The team repeatedly identified themselves as FBI agents, stated that they had a federal search warrant, and turned on flashing police lights and sirens. When no one allowed the team to enter the premises, the team called a SWAT team for assistance.

27. A SWAT team arrived at approximately 7AM ET. The SWAT team repeatedly announced their presence and asked the occupants of the premises to come out. When the SWAT team called out WILKINS's name, a man—who was later identified as WILKINS's father—came out of the premises at approximately 8:20AM. In order to obtain visual of the individuals remaining inside the premises and the front entry area of the premises, the SWAT team started removing the vehicles parked in front of the fences surrounding the premises. After seeing the vehicles being removed, WILKINS and a woman—who was later identified as WILKINS's mother—came out of the premises and allowed the FBI agents to execute the search warrant.

28. Inside the premises, I found an Apple MacBook and a product box for the MacBook, which had a serial number. This serial number was included in the records from Apple as one of the registered devices for an Apple account associated with the Eversosad Email Address. I later learned that the Apple MacBook's hard drive had been wiped completely.

29. Investigators asked WILKINS to confirm his identity, but he refused to speak with law enforcement. However, the team found identification documents bearing WILKINS's name and photo inside the premises. The team also found evidence suggesting that WILKINS attended or is attending the University of West Florida.

30. Investigators seized laptops, cell phones, and other digital devices that appeared to belong to WILKINS. Investigators also seized three cryptocurrency wallet



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

seed phrases. One of the seed phrases is for a Monero wallet, an anonymity-enhanced cryptocurrency frequently used by criminals that is difficult to trace between source and destination. Based on my training and experience, I know that cybercriminals use Monero to enhance anonymity and the difficulty in cryptocurrency transaction attribution for law enforcement. There were eight cryptocurrency addresses associated with the Monero wallet, and three of those addresses were provided by "Sibel.eth" to SUBJECT #1. A review of the transaction history associated with the Monero wallet showed that WILKINS sent and/or received approximately 1,233 Monero's or "XMR" worth approximately $382,000.

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

31. Based on the above facts, I respectfully submit that there is probable cause to believe that Zyaire Dontaevious Zamarion WILKINS committed the aforementioned offense.

Sean Huseby, Complainant
Special Agent, FBI

The above-named agent provided a sworn statement attesting to the truth of the foregoing Complaint and Affidavit. Based on the Complaint and Affidavit, the Court hereby finds there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 10th day of July, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970